UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SURGICAL INSTRUMENT MANUFACTURERS, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 4:14 CV 1281 JMB |
| ATLAS SPINE, INC., | ) ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff Surgical Instrument Manufacturers, Inc.'s ("SIM") Motion for Summary Judgment. (ECF No. 20) Defendant Atlas Spine, Inc. filed a Memorandum in Opposition (ECF No. 25) and SIM filed a Reply (ECF No. 28) thereto. All matters are pending before the undersigned United States Magistrate Judge, with the consent of the parties, pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the motion will be granted.

**I.   Background**

The present matter stems from a contract dispute between SIM and Atlas Spine. As its name indicates, SIM manufactures surgical instruments. SIM and Atlas Spine entered into an Agreement governing the terms under which SIM would manufacture and deliver surgical instruments and other products to Atlas Spine, and Atlas Spine would pay SIM for the products ordered. Atlas Spine ordered products from SIM by conveying orders via e-mail, and SIM would send invoices to Atlas Spine. The present dispute involves Atlas Spine's orders in November and December 2013. SIM contends that it delivered all of the required products

(except for three invoices), and Atlas Spine failed to pay amounts due under the invoices. SIM filed a Complaint requesting relief in the form of monetary damages in the amount of $190,848.83 for breach of contract (Count I), action on account (Count II), and in the alternative, quantum meruit in the amount of $187,624.40, the price of the products delivered (Count III).

SIM filed a summary judgment motion requesting the Court to enter judgment for breach of contract and action on account totaling $237,666.67. This amount reflects $190, 848.83 owed in principal plus $46,711.94 in prejudgment interest accrued through July 22, 2015. Additionally SIM seeks prejudgment interest accruing until judgment is entered at a per diem rate of $94.12 after July 22, 2015,[1] plus attorney's fees and costs, as provided under the Agreement, and post-judgment interest at the contractual rate of 18% per annum. In the alternative, if the Court does not grant summary judgment for breach of contract and action on account, SIM prays for relief in quantum meruit for the price of the products delivered to Atlas Spine, totaling $187, 624.40.

In response, Atlas Spine argues that a genuine issue of material fact exists regarding the amount of monies due and owing to SIM. Atlas Spine contends that SIM did not fully perform its obligations due to certain nonconforming goods which were either returned to SIM or were scraped. Specifically, Atlas Spine claims that it should not be required to pay $3,224.43 for thirty-eight units of non-conforming products listed on invoice # 140353 (item #10671), # 140359 (item #10672), and # 140536 (item # 70413 and #70422). Atlas Spine argues that these particular products were scrapped due to non-conformity and invoice # 140186 (item #10756)

---

[1] By the Court's calculation, an additional $7,906.08 should be awarded for the eighty-four days that have passed since July 22, 2015.

because the products were returned to SIM.[2]  Therefore, Atlas Spine contends that the amount that is owed to SIM is unliquidated.  Atlas Spine did not raise any issue regarding liquidated damages in its briefing to the Court.  Rather, Atlas Spine raised the issue for the first time at oral argument.  In particular, Atlas Spine argued that prejudgment interest was not appropriate in this case because, allegedly, all of SIM's claims in this matter are unliquidated.

## II. The Undisputed Evidence before the Court on the Motion

Viewing all facts and drawing all reasonable inferences in the light most favorable to the nonmoving party, the Court sets forth the following facts:

### A. Background

On April 23, 2012, SIM and Atlas Spine entered into an Agreement governing the terms under which SIM would manufacture and deliver surgical instruments and other products to Atlas Spine, and Atlas Spine would pay SIM for the products ordered.  (ECF No. 22-2 at 1, Walter Aff. at ¶ 7)  SIM is a Missouri corporation with its principal place of business in St. Louis, Missouri. Atlas Spine is a Florida corporation with its principal place of business in Jupiter, FL.  (ECF No. 1 at ¶¶ 1, 3)

### B. April 23, 2012, Agreement

Both SIM and Atlas Spine signed the April 23, 2012, Agreement.  The Agreement sets

---

[2]Atlas Spine filed an affidavit of Douglas Watson, President and Chief Executive Officer of Atlas Spine, in support of its response to SIM's motion for summary judgment.  In his affidavit, Mr. Watson specifically identifies for the first time non-conforming products.  During his earlier deposition, Mr. Watson was unable to specifically identify any non-conforming goods.  SIM suggests that the Court should not consider Mr. Watson's contradictory affidavit.  Regardless of whether the Court considers his averments, as explained below, Mr. Watson's affidavit does not create a genuine issue of material fact that would preclude granting summary judgment in favor of SIM.

out the terms under which Atlas Spine would procure services and/or materials from SIM. (ECF Nos. 22-2/ 25-2) The Agreement provides that Atlas Spine is to pay SIM for the products covered by each invoice within thirty days after the date of each of the invoices. (ECF Nos. 22-1 at ¶ 22, 22-2/22-5 at ¶ 3) The Agreement contemplated the possibility that Atlas Spine might reject some goods. The Inspection of Goods; Rejection of Goods and Revocation of Acceptance paragraph provides as follows:

> Notwithstanding any prior inspection or payments, all Goods will be subject to final inspection and acceptance at Buyer's location within 30 days after delivery, Buyer shall notify Seller within 30 days after delivery of any apparent defective material or workmanship or non-conformity of any Goods to the product specifications.... If Buyer fails to so notify Seller, Buyer will be deemed to have accepted the Goods. Buyer will have the right to reject Goods only in the event that Goods are defective in material and workmanship, or otherwise not in conformity with the specifications or the requirements set forth in the Purchase Order and Order Acknowledgement, Buyer will not be required to pay for any rejected.... Buyer will return all rejected Goods to Seller at Seller's expense. Rejected Goods must be accompanied by a written explanation of failure.

(ECF Nos. 22-2/22-5 at ¶ 17) The Agreement also provides that SIM may refuse to make further shipments of products to Atlas Spine should a balance remain outstanding for more than 30 days after Atlas Spine's receipt of an invoice. (Id. at ¶ 3; ECF No. 22-1 at ¶ 18) The Agreement specifically states that "[n]o waiver, alteration, modification of or in addition to the terms and conditions contained herein shall be binding unless agreed to in writing by a duly authorized representative of both Parties." (ECF Nos. 22-2/25-2 at ¶ 29)

Pursuant to the terms of the Agreement, the obligations on the invoices bear interest of 1.5% per month or 0.0493% per diem. (ECF Nos. 22-1 at ¶ 27, 22-2 at ¶¶ 2-3/25-2 at ¶¶ 2-3)

Pursuant to the terms of the Agreement, Atlas Spine is obligated to pay costs of collection including attorney's fees. SIM has retained counsel to represent SIM in collection of

the outstanding obligations owed under the invoices pursuant to the Agreement.

**C. Purchase Orders**

Under the Agreement, Atlas Spine conveyed purchase orders to SIM via electronic mail. Atlas Spine was allowed to order goods on credit. (ECF Nos. 22-1 at ¶ 10, 22-22 at 14) Upon receipt of a purchase order, SIM agreed to manufacture and deliver the products ordered by sending Atlas Spine an electronic mail message that included an Order Acknowledgement, along with SIM's Standard Terms and Conditions of Sale on Credit ("Terms and Conditions"). (ECF Nos. 22-1 at ¶¶ 11-12, 22-22 at 14-15, 22-7 at 4-9) SIM also sent invoices to Atlas Spine for the price of the products ordered. (ECF Nos. 22-8; 22-11, 22-14, 22-17, 22-20) SIM's Terms and Conditions provide that all payments are due net thirty days from receipt of products and invoice, and that SIM reserves the right to refuse to make further shipments should there be any balance outstanding for more than thirty days after Atlas Spine's receipt of an invoice. (ECF No. 22-7 at 5) The present dispute relates to purchase orders from Atlas Spine in November and December 2013. Atlas Spine has not paid SIM for the products listed in the affected purchase orders and invoices. (ECF Nos. 22-1 at ¶ 14, 22-3, 22-22 at 55)

Atlas Spine accepted delivery of the SIM products listed on the invoices and never properly rejected any of the SIM products under the invoices pursuant to the Agreement. (ECF No. 22-1 at ¶¶ 20-21) SIM delivered all the products listed on the invoices except for the products listed on invoice #141118 dated May 30, 2014, # 141119 dated May 30, 2014, and # 141248 dated June 18, 2014, because of Atlas Spines's nonpayment for other products previously delivered. (ECF No. 22-1 at ¶ 19) The non-payments at issue relate to five purchase orders. (ECF No. 22-1 at 5-8)

Atlas Spine submitted Purchase Order 13-11-012 on November 6, 2013. (ECF Nos. 22-1 at ¶ 18, 22-6-7) SIM manufactured the products ordered and delivered the products to Atlas Spine. SIM conveyed invoice # 140224 (January 22, 2014) to Atlas Spine, and this invoice remains unpaid. (ECF Nos. 22-1 at ¶¶ 40, 42, 22-8) Atlas Spine admits that Purchase Order 13-12-012 was conveyed to SIM; that SIM conveyed an Order Acknowledgement and Terms and Conditions to Atlas Spine; that the products listed on the purchase order were manufactured by SIM and delivered to Atlas Spine; and that Atlas Spine has not paid for the products. (ECF No. 26 at ¶¶ 22-26)

Atlas Spine submitted Purchase Order 13-11-013 on November 7, 2013. (ECF No. 22-9) On November 8, 2013, SIM conveyed an Order Acknowledgement and Terms and Conditions to Atlas Spine. (ECF Nos. 22-1 at ¶ 45, 22-10) The products listed on invoice # 140186 dated January 17, 2014, invoice # 140204 dated January 20, 2014, invoice # 140221 dated January 21, 2014, and invoice # 140251 dated January 24, 2014, were manufactured by SIM and delivered to Atlas Spine. (ECF Nos 22-1 at ¶¶47-48) SIM specifically manufactured for Atlas Spine the products listed on invoice # 141118 dated May 30, 2014, invoice # 141119 dated May 30, 2014, and invoice # 141248 dated June 18, 2014, but the products were not delivered to Atlas Spine, due to previous non-payments and the outstanding balance owed on Atlas Spine's account in the amount of $38,348.98. (Id. at ¶¶ 49, 52) Atlas Spine admits that Purchase Order 13-11-013 was conveyed to SIM; that SIM conveyed an Order Acknowledgement and Terms and Conditions to Atlas Spine; that the products listed on the orders (except those listed in Invoice # 14118, # 14119, and # 141248) were manufactured by SIM and delivered to Atlas Spine; and that Atlas Spine has not paid for the products. (ECF No. 26 at ¶¶ 29-39)

Atlas Spine submitted Purchase Order 13-11-064 on November 26, 2013. (ECF Nos. 22-1 at ¶ 54, 22-12) On December 2, 2013, SIM conveyed by electronic mail an Order Acknowledgement and Terms and Conditions to Atlas Spine. (ECF Nos. 22-1 at ¶ 56, 22-13) SIM manufactured and delivered to Atlas Spine the products listed on invoice # 140217 dated January 21, 2014, invoice # 140234 dated January 23, 2014, invoice # 140252 dated January 24, 2014, invoice # 140266 dated January 28, 2014, invoice # 140273 dated January 29, 2014, invoice #140283 dated January 30, 2014, invoice # 140292 dated January 31, 2014, invoice # 140310 dated February 4, 2014, and invoice # 140331 dated February 6, 2014, but the invoices remain unpaid in the total amount of $47,231.61. (ECF Nos. 22-1 at ¶ 61, 22-14) Atlas Spine admits that Purchase Order 13-11-064 was conveyed to SIM; that SIM conveyed an Order Acknowledgement and Terms and Conditions to Atlas Spine; that the products listed on the order were manufactured by SIM and delivered to Atlas Spine; and that Atlas Spine has not paid for the products. (ECF No. 26 at ¶¶ 40-48)

Atlas Spine submitted Purchase Order 13-12-011 on December 6, 2013. (ECF Nos. 22-1 at ¶ 63, 22-15) On December 9, 2013, SIM conveyed an Order Acknowledgement and Terms and Conditions to Atlas Spine. (ECF Nos. 22-1 at ¶ 66, 22-16) SIM manufactured and delivered to Atlas Spine the products listed on invoice # 140368 dated February 11, 2014, invoice # 140372 dated February 12, 2014, invoice # 140380 dated February 13, 2014, invoice # 140412 dated February 18, 2014, invoice # 140421 dated February 19, 2014, invoice # 140441 dated February 21, 2014, invoice # 140453 dated February 24, 2014, invoice # 140487 dated February 26, 2014, invoice # 140497 dated February 27, 2014, invoice # 140522 dated March 3, 2014, invoice    # 140527 dated March 4, 2014, and invoice # 140536 dated March 5, 2014, but the

invoices remain unpaid in the amount of $67,249.84. (ECF Nos. 22-1 at ¶ ¶67, 70, 22-17) Atlas Spine admits that Purchase Order 13-12-011 was conveyed to SIM, that SIM conveyed an Order Acknowledgement and Terms and Conditions to Atlas Spine, that the products listed on the order were manufactured by SIM and delivered to Atlas Spine, and that Atlas Spine has not paid for the products. (ECF No. 26 at ¶¶ 49-57)

Atlas Spine submitted Purchase Order 13-12-019 on December 11, 2013. (ECF Nos. 22-1 at ¶ 74, 22-18) On December 19, 2013, SIM conveyed an Order Acknowledgement and Terms and Conditions to Atlas Spine. (ECF Nos. 22-1 at ¶74, 22-19) SIM manufactured and delivered to Atlas Spine the products listed as invoice # 140267 dated January 28, 2014, invoice # 140353 dated February 10, 2014, and invoice # 140359 dated February 11, 2014, but the invoices remain unpaid in the amount of $22,105.52. (ECF Nos. 22-1 at ¶¶ 76, 79, 22-20) Atlas Spine admits that Purchase Order 13-11-013 was conveyed to SIM; that SIM conveyed an Order Acknowledgement and Terms and Conditions to Atlas Spine; that the products listed on the order (except those listed in Invoice # 14118, # 14119, and # 141248) were manufactured by SIM and delivered to Atlas Spine, and that Atlas Spine has not paid for the products. (ECF No. 26 at ¶¶ 58-66)

On June 19, 2014, SIM's counsel sent a letter to Atlas Spine demanding payment of the outstanding obligations under the relevant invoices to SIM. (ECF Nos. 22-1 at ¶ 33, 22-5) The outstanding invoices are summarized on SIM's account statement dated July 10, 2014; the total unpaid obligation shown is $190,848.73. (ECF Nos. 22-1 at ¶¶ 24, 26, 22-3) Atlas Spine's A/P Aging QuickZoom (accounts payable) reflects an identical outstanding amount of accounts payable to SIM. (ECF No. 22-21) To date, Atlas Spine has not paid the invoices within the

terms of the Agreement. (ECF No. 22-1 at ¶¶ 23, 35)

Atlas Spine received all of the products listed on the invoices except for the products in invoice # 141118, dated May 30, 2014, charged at $1,205.58, invoice # 141119, dated May 30, 2014, charged at $1,206.78, and invoice # 141248, dated June 18, 2014, charged at $5,117.84, which were specifically manufactured for Atlas Spine but not delivered to Atlas Spine, due to previous non-payments and the outstanding balance owed.

## III.    Discussion

### A.  Standard of Review

Rule 56 of the Federal Rules of Civil Procedure provides that a court may grant summary judgment if all of the information before the court shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. See Celotex Corp. V. Catrett, 477 U.S. 317, 322 (1986). The movant "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] ... which it believes demonstrate the absence of a genuine issue of material fact." Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). A party asserting that a fact cannot be genuinely disputed must support the assertion by "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 248 (1986). In response, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," and must come forward with "specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Therefore, "if a nonmoving party who has the burden of persuasion at trial does not present sufficient evidence as to any element of the cause of action, then summary judgment is appropriate." Anderson, 477 U.S. at 256.

In considering motions for summary judgment, courts view the facts in the light most favorable to the nonmoving party. Torgerson, 643 F.3d at 1042 (quotations and internal citations omitted). But that requirement applies "only if there is a genuine dispute as to those facts." Id. "A mere scintilla of evidence is insufficient to defeat summary judgment and if a nonmoving party who has the burden of persuasion at trial does not present sufficient evidence as to any element of the cause of action, then summary judgment is appropriate." Pederson v. Bio-Medical App. Of Minn. 775 F.3d 1049, 1053 (8th Cir. 2015) (quoting Brunsting v. Lutsen Mountains Corp., 601 F.3d 813, 820 (8th Cir. 2010)). Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions" and are not within the province of the court on a motion for summary judgment. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000) (quoting Anderson, 477 U.S. at 255). Further, if the nonmoving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, ... there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322-23. Because the undisputed facts demonstrate that SIM is entitled to judgment as a matter

of law, the undersigned will grant the motion for summary judgment.

**B. Breach of Contract**

In Missouri,[3] the elements for a breach of contract are: "(1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." GP&W, Inc. v. Int'l Exch. Servs., LLC, 2012 WL 4513851 (E.D. Mo. 2012). "Under Missouri law, summary judgment is appropriate [in a contract case] where the language of the contract is clear and unambiguous such that 'the meaning of the portion of the contract in issue is so apparent that it may be determined from the four corners of the document.'" Family Snacks of North Carolina, Inc. v. Prepared Food Prods. Co. , Inc., 295 F.3d 864, 867 (8th Cir. 2002) (quoting Missouri Consol. Health Care Plan v. BlueCross BlueShield of Mo., 985 S.W.2d 903, 908 (Mo. Ct. App. 1999)). When a contract uses plain and unequivocal language it must be enforced as written. Lake Cable, Inc. v. Trittler, 914 S.W.2d 431, 436 (Mo. Ct. App. 1996). When a contract is unambiguous, the language used is given its natural, ordinary, and common-sense meaning, and the entire contract is considered to determine the intention of the parties. Chehval v. St. John's Mercy Med. Ctr., 958 S.W.2d 36, 38 (Mo. Ct. App. 1997). If a contract is unambiguous, the intention of the parties and the legal import of the language of the contract cannot be varied by parol or extrinsic evidence. Allison v. Flexway Trucking, Inc., 28 F.3d 64, 67 (8th Cir. 1994) (applying Missouri law).

SIM and Atlas Spine entered into an Agreement on April 23, 2012, governing a contractual relationship between the two parties whereby Atlas Spine would order and purchase

---

[3]The parties do not disp ute that Missouri law applies to the contract at issue.

products from SIM. The Agreement was clear and valid and defined the contractual relationship between SIM and Atlas Spine governing the product orders. It is undisputed that SIM performed its obligations, even though Atlas Spine attempts to create a genuine issue of material fact by asserting that certain items were either scraped or returned to SIM.

In his affidavit, Mr. Douglas specifically identifies for the first time non-conforming products. SIM requests that Watson's affidavit not be considered inasmuch as the affidavit contradicts his prior deposition testimony. "Post-deposition contradictory affidavits are admitted only when the prior deposition testimony shows confusion, and the subsequent affidavit helps explain the contradiction." Popoalii v. Corr. Med. Servs., 512 F.3d 488, 498 (8th Cir. 2008) (citation omitted). The Popoalii court reasoned that "[i]f testimony under oath ... can be abandoned many months later by the filing of an affidavit, probably no cases would be appropriate for summary judgment. A party should not be allowed to create issues of credibility by contradicting his own earlier testimony." Id. (quoting Camfield Tires, Inc. v. Michelin Tire Corp., 719 F.2d 1361, 1365 (8th Cir. 1983)). Even considering Mr. Watson's affidavit averments, these do not to create a genuine issue of material fact to avoid summary judgment. Accepting as true that Atlas Spine returned and scrapped some items as set forth in Mr. Watson's averments in his affidavit, Atlas Spine nonetheless has failed to establish that it properly rejected any of the items pursuant to the Agreement by providing written notice or an explanation of any non-conformity. The plain language of the Agreement required Atlas Spine to notify SIM of non-conformity within thirty days after delivery. Atlas Spine has not produced any evidence showing notification of non-conformity or any written explanation as explicitly required by the

terms of the Agreement.[4] The record is devoid of any evidence showing Atlas Spine complied with the contractual terms of the Agreement for returning or scrapping non-conforming items. As result of this failure to reject the items as required by the Agreement, Atlas Spine is deemed to have accepted the items under the terms of the Agreement.

The Court concludes as a matter of law that SIM and Atlas Spine had a contractual relationship by way of the Agreement entered into by the parties. Here, SIM has shown by the undisputed pleadings and documentary evidence that it supplied the products ordered by Atlas Spine,[5] and that Atlas Spine has not made payment as required by the Agreement. Specifically, SIM submits exhibits consisting of the invoices summarized on the Account Statement dated July 10, 2014. The total unpaid obligation owed to SIM by Atlas Spine on account under the invoices is $190,848.83, and this amount matches SIM's account receivable from Atlas Spine. Similarly, Atlas Spine's internal accounting reflects an identical outstanding amount of accounts payable to SIM. Thus, the undisputed evidence shows that the outstanding principal obligations owed to SIM by Atlas Spine on account under the invoices is $190,848.83. Atlas Spine has presented no evidence to dispute that SIM supplied the products ordered by Atlas Spine, or that payment has been made. By the terms of the Agreement, the obligations on the invoices bear

---

[4] Moreover, in his affidavit Mr. Watson averred that Atlas Spine, pursuant to its own practice, failed to notify SIM within 30 days regarding any non-conformity issues.

[5] Although SIM did not deliver the products which were specifically manufactured for Atlas Spine listed in invoice 141118 dated May 30, 2014, charged at $1,205.58, invoice 141119 dated May 30, 2014, charged at $1,206.78, and invoice 141248 dated June 18, 2014, charged at $5,117.84, due to previous non-payments and the outstanding balance owed, pursuant to the Agreement, SIM could refuse to make further shipments of products to Atlas Spine due to an outstanding balance over thirty days.

interest of 1.5% per month, or 0.0493% per diem, a per diem rate of $94.12.  Thus, as of October 15, 2015, the date of judgment entered herein, the interest accrued is $54,618.02.  Accordingly, the motion will be granted in favor of SIM against Atlas Spine on Count I of Plaintiff's Complaint in the amount of $190, 848.83 as principal, plus $54,618.02 in prejudgment interest.  The issue of prejudgment interest is addressed in additional detail below.

C. **Action on Account (Count II) and Quantum Meruit (Count III)**

SIM has pled a claim for action on account in Count II and, alternatively, a claim for quantum meruit in Count III of its Complaint.  Because the Court is entering judgment in favor of SIM and full relief was granted on Count I, the breach of contract claim, the Court need not address these claims and will dismiss them without prejudice.

D. **Prejudgment Interest**

SIM asks the Court to award prejudgment interest in the amount of $54,618.02.  Atlas Spine opposes any award of prejudgment interest, arguing that no interest can be awarded on unliquidated claims.  Atlas Spine argues that, because the amount owing was not "liquidated," SIM is not entitled to any award of prejudgment interest.  SIM responded by arguing the each invoice evidenced a specific amount owed, and Atlas Spine never objected to the amounts owed on the invoices so the claims are liquidated.[6]  Stated differently, according to SIM, each invoice

---

[6]In essence, Atlas Spine does not contest that it owes $187,624.40 to SIM from numerous unpaid invoices.  Rather, at oral argument, Atlas Spine argued for the first time that it had allegedly rejected approximately $3,224.43 in non-conforming/scrapped goods.  As a result, according to Atlas Spine, the entire amount in unliquidated, and therefore, SIM is not entitled to prejudgment interest at all – even on the amounts that Atlas Spine admits it owes.  In any event, Atlas Spine has not created any genuine issue of material fact as to any allegedly non-conforming or scrapped goods because such goods were not rejected within the meaning of the parties' Agreement.

should be treated separately. Thus, each invoice represents a separate, liquidated claim.

Prejudgment interest is a matter of substantive state law. First Amer. States Bank v. Milnikel, 897 F.2d 319, 327 (8th Cir. 1990). Missouri's prejudgment interest statute provides in relevant part:

> Creditors shall be allowed to receive interest at the rate of nine percent per annum, when no other rate is agreed upon, for all moneys after they become due and payable, on written contracts, and on accounts after they become due and demand of payment is made.

Mo. Rev. Stat. § 408.020 For prejudgment interest to be awarded, the claim for damages must be liquidated. Rois v. H.C. Sharp Co., 203 S.W.3d 761, 766 (Mo. Ct. App. 2006). "A claim is liquidated when the claim is 'fixed and determined or readily determinable, but it is sufficient if the amount due is ascertainable by computation or by a recognized standard.'" Id. (quoting Watters v. Travel Guard Intern., 136 S.W.3d 100, 111 (Mo. Ct. App. 2004)). "The mere existence of a dispute relative to liability does not render a claim unliquidated," and if "the amount of damages is fairly certain, even though liability is an issue, the court will award prejudgment interest." Lundstrom v. Flavan, 965 S.W.2d 861, 866 (Mo. Ct. App. 1998). No "exact calculation" of a claim is required for a claim to be liquidated. Hocker Oil Co., Inc. v. Barker-Phillips-Jackson, Inc., 997 S.W.2d 510, 521 (Mo. Ct. App. 1999). The fact the amount payable is put in doubt because defendant contests liability or asserts defenses or counterclaims does not convert the claim into an unliquidated claim or preclude plaintiff's recovery of prejudgment interest. Ehrle v. Bank Bldg. & Equip. Corp., 530 S.W.2d 482, 497 (Mo. Ct. App. 1997). If the prejudgment interest statute applies, an award of interest is not discretionary but is compelled. Rois, 203 S.W.3d at 767.

"Under Missouri law, a defendant's denial of liability or challenge to the amount claimed

on a contract will not alter the fact that the amount claimed by the plaintiff is sufficiently ascertainable to require the award of prejudgment interest." St. Joseph Light & Power Co. v. Zurich Ins. Co., 698 F.2d 1351, 1356 (8th Cir. 1993) (citing Denton v. Constr. Co. v. Missouri State Hwy Comm'n, 454 S.W.2d 44, 59-60 (Mo. 1970)). A dispute as to liability does not make the amount unliquidated for purposes of denying prejudgment interest. Knight v. DeMarea, 670 S.W.2d 59, 64 (Mo. Ct. App. 1984); but see TVI, Inc. v. Infosoft Tech., Inc., 2008 WL 554361, at *1 (E.D.Mo. 2008) (finding party not entitled to award of prejudgment interest in the entire amount requested inasmuch as a bona fide dispute existed over the amount of damages owed).

Here, each invoice evidenced the amount owed, Atlas Spine never objected to the amount owed or questioned whether the claims were unliquidated until the oral argument in this Court. In June 2014, counsel for SIM sent a demand letter to Atlas Spine requesting payment of the outstanding obligations to SIM. Likewise, the outstanding invoices are summarized on SIM's account statement dated July 10, 2014, with the total unpaid obligation shown as $190,848.73. Indeed, Atlas Spine's A/P Aging QuickZoom reflects an identical outstanding amount of accounts payable to SIM. The fact that Atlas Spine may have disputed the conformity of some of the products delivered does not make SIM's claim unliquidated or unascertainable. As explained above, Atlas Spine failed to properly reject any of the goods pursuant to the Agreement. Based on the foregoing, the Court finds the amount of payment due was the amount reflected on the face of each invoice. Thus it cannot be said that the amount of damages was not ascertainable. Accordingly, the Court will include an award of prejudgment interest in the amount of $54,618.02. See Jerry Bennett Masonry Contractor, Inc. v. Crossland Const. Co., 213 S.W.3d 733, 736 (Mo. Ct. App. 2007) (finding that any right appellant had to prejudgment

interest "expired when that contractual obligation was reduced to a judgment obligation.")  Thus, SIM is entitled to prejudgment interest beginning on June 19, 2014, the date of the demand letter, and ending on October 15, 2015, the date of judgment.

**IT IS HEREBY ORDERED** that Plaintiff Surgical Instrument Manufacturers, Inc.'s Motion for Summary Judgment (ECF No. 20) is **GRANTED** in part.

**IT IS FURTHER ORDERED** that  judgment be entered in favor of Plaintiff Surgical Instrument Manufacturers, Inc. and against Defendant Atlas Spine, Inc. on Count I of Plaintiff's Complaint in the amount of $190, 848.83 as principal, plus $54,618.02 in prejudgment interest accrued through October 15, 2015, plus post-judgment interest at the contractual rate of 18% per annum**.**

**IT IS FURTHER ORDERED** that Counts II and III of Plaintiff's Complaint are **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that Plaintiff Surgical Instrument Manufacturers, Inc. shall submit supplemental briefing regarding the amount of attorney's fees and costs to be awarded no later than November 5, 2015, and Atlas Spine, Inc. shall file any responsive pleading thereto no later than November 19, 2015.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

Dated this  15  day of October, 2015.

*/s/ John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE